

FILED
FEB 2 6 2017

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>    v.<br><br>JEFFREY HARRINGTON (1),<br>MICHAEL MAYER (2),<br>VETERAN LOGISTICS, INC. (3),<br>INDUSTRIAL XCHANGE, INC. (4),<br>BOSTON LASER TECHNOLOGY, INC.(5),<br>KIMBERLEE HEWITT(6),<br>NATALEE HEWITT(7),<br><br>       Defendants. | Case No. 17cr0488-GPC<br><br>I N F O R M A T I O N<br><br>Title 18, U.S.C., Sec. 371 – Conspiracy to Commit Wire Fraud and File False Claim; Title 26, U.S.C., Sec. 7206(1) – False Statement on Tax Return; Title 18, U.S.C., Sec. 981(a)(1)(C) and Title 28, U.S.C. Sec. 2461(c) – Criminal Forfeiture |

The United States Attorney charges:

**INTRODUCTORY ALLEGATIONS**

At all times relevant to this Indictment:

1. Defendant VETERAN LOGISTICS, INC. ("VLI") was a California corporation operating in the Southern District of California. VLI was owned and operated by co-Defendants MICHAEL MAYER and JEFFREY HARRINGTON. Defendant is a defense contracting firm that sells supplies to the Department of Navy, General Services Administration, and other federal departments and agencies.

2. Defendant INDUSTRIAL XCHANGE, INC. ("IXI") was a Virginia corporation operating in the Southern District of California. IXI was owned and operated by co-Defendants MICHAEL MAYER and JEFFREY HARRINGTON. Defendant is a defense contracting firm that sells supplies to the Department of Navy, General Services Administration, and other

federal departments and agencies. MICHAEL MAYER and JEFFREY HARRINGTON acquired IXI in approximately 2009.

3. Defendant BOSTON LASER TECHNOLOGY ("BLTI"), was a Georgia corporation operating in the Southern District of California. BLTI has been owned and operated by co-Defendants MICHAEL MAYER and JEFFREY HARRINGTON since December, 2010. Defendant is a defense contracting firm that sells supplies to the Department of Navy, General Services Administration, and other federal departments and agencies.

4. Defendants KIMBERLEE HEWITT and NATALEE HEWITT were sales representatives employed by VLI and working on behalf of VLI, IXI and BLTI.

5. Beginning in approximately 2008, Defendant VLI applied for and received authorization from the Defense Logistics Agency ("DLA") to sell products to the United States Government through the Department of Defense ("DOD") EMALL, which is a web-based electronic commerce site that allows authorized users (including Navy Logistics Specialists and other supply personnel) to search, compare and purchase products. Defendant IXI and BLTI similarly applied for and received authorization from DLA to sell products through EMALL beginning in 2007 and 2008, respectively.

6. Each EMALL contract allowed the corporation to sell up to $5,000,000 in goods over the life of the contract, unless the corporation received a modification to extend the contract maximum. Defendants VLI, IXI AND BLTI collectively applied for and received seven separate EMALL contracts from DLA, as well as several modifications to extend the contracts.

//
//

## COUNT ONE

### (Conspiracy - 18 U.S.C. § 371)

7. The Introductory Allegations contained in paragraphs 1 through 6 of this Indictment are realleged and incorporated as if set forth fully herein.

8. Beginning in approximately 2007 and continuing through at least December 2015, within the Southern District of California, and elsewhere, defendants JEFFREY HARRINGTON, MICHAEL MAYER, VETERAN LOGISTICS, INC., INDUSTRIAL XCHANGE, INC., BOSTON LASER TECHNOLOGY, INC., KIMBERLEE HEWITT and NATALEE HEWITT did knowingly and willfully conspire and agree with each other to commit the following offenses against the United States:

   a. False Claims, in violation of Title 18, United States Code, Section 287

   b. Wire Fraud, in violation of Title 18, United States Code, Section 1343.

### MANNER AND MEANS

9. It was part of the conspiracy that Defendants would electronically submit claims to DLA via FastPay for payment for items Defendants knew had not been sold to the Navy and had in fact been substituted with other products Defendants were not authorized to sell.

10. It was further part of the conspiracy that Defendants would electronically submit claims to DLA for payment, thereby certifying that all items had been delivered, when in fact Defendants had not fulfilled the order, i.e. had not delivered either the actual or substitute products.

//

//

11. It was further part of the conspiracy that Defendants would mark-up the substitute products sold to the Navy with no prior approval or authorization from DLA to unlawfully increase their profit.

12. Defendants used interstate wire communications to transmit contract proposals to the United States and caused the United States to use interstate wire communications to pay Defendants, all of which were essential parts of the scheme.

## OVERT ACTS

13. In furtherance of said conspiracy and to effect and accomplish the objects thereof, the following overt acts, among others, were committed within the Southern District of California, and elsewhere:

    a. On or around September 23, 2011 and September 28, 2011, BLTI entered into three identical delivery order contracts with DLA to supply Maritime Expeditionary Security Group Two ("MESG-2") at Norfolk Naval Shipyard with 3,416 Post-It writing paper pads at a price of $24.24 each, for a total of $83,803.84. The grand total of all three (identical) contracts was $248,411.52, which is well in excess of the $100,000 maximum contract amount allowed in the DoD EMALL.

    b. KIMBERLEE HEWITT and NATALEE HEWITT, acting on behalf of BLTI and VLI, then partially filled that order by providing MESG-2 with 32 AC/DC tranceivers at a price of $4,967.17 each for a total of $158,949.44. KIMBERLEE HEWITT and NATALEE HEWITT, acting on behalf of BLTI and VLI, then completed the order on or around September 28, 2011, providing MESG-2 with 18 AC/DC transceivers at a price of $4,967.17 each for a total of $89,409.06. The grand total of all three sales orders was $248,358.50.

    c. In order to fill these orders, JEFFREY HARRINGTON, KIMBERLEE HEWITT and NATALEE HEWITT, acting on behalf of BLTI and VLI,

purchased 50 tranceivers from MISC Engineering, LLC in West, Texas for $2,210 each, for a total of $110,500.

  d. On or around October 7, 2011, P.H., acting on behalf of BLTI and VLI, submitted three fast pay invoices requesting payment of $82,803.84 for the sale to MESG-2, causing DFAS to pay BLTI a total of $248,411.52 on October 24, 2011, even though the actual AC/DC transceivers were not delivered to MESG-2 until December 3, 2011.

  e. At all times between September 23, 2011 and December 3, 2011, all Defendants concealed from DLA and DFAS the fact that VLI/BLTI (1) actually supplied MESG-2 with 50 tranceivers and not 10,248 writing pads, (2) marked up the cost of the tranceivers (which neither BLT nor VLI were authorized to sell to the United States military) approximately 134%, (3) failed to provide any goods or services for the remaining $53.02.

  f. On or around September 28, 2011, IXI entered into a contract with DLA to supply the USS George H.W. Bush with 628 pipe wrench straps at a price of $76.30 each, for a total of $47,916.40.

  g. On an unknown date after October 14, 2011, KIMBERLEE HEWITT and NATALEE HEWITT, acting on behalf of VLI, then filled that order by providing the USS George H.W. Bush with 500 inflatable chambers, 200 industrial water-activated strobe lights, and 300 signaling whistles, at a price of $37.99, $139.99 and $3.08 each, respectively, for a total of $47,916.40.

  h. On or about October 14, 2011, in order to fill the order, MICHAEL MAYER, KIMBERLEE HEWITT and B.H., acting on behalf of VLI, purchased the inflatable chambers, strobe lights, and signaling whistles from The Coleman Company at a price of $21.66, $85.88 and $1.22 each, for a total of $28,372.

i. On or around October 14, 2011, JEFF HARRINGTON, acting on behalf of IXI, submitted a fast pay invoice requesting payment of $47,916.40 for the sale to the USS George H.W. Bush, causing DFAS to pay VLI that amount on October 31, 2011.

j. At all times between September 28, 2011 and October 31, 2011, all Defendants concealed from DLA and DFAS the fact that IXI/VLI (1) actually supplied the ship with inflatable chambers, strobe lights and whistles and not 628 pipe wrench straps, and (2) marked up the cost of the inflatable chambers, strobe lights and signaling whistles (which neither IXI nor VLI were authorized to sell to the United States military) by an average of over 68%.

k. On or about October 2, 2013, Defendant VLI entered into a delivery order contract with DLA to supply the USS Ronald Reagan with 27 industrial motorized plumber snakes at a price of $2,474.36 each, for a total of contract value of $66,807.72.

l. On or about October 3, 2013, Defendant Harrington acting on behalf of Defendant VLI purchased all of these items from Do It Best Corp in Fort Wayne, Indiana for $39,558.40.

m. On or about October 3, 2013, Defendant Mayer and other charged and uncharged co-conspirators acting on behalf of VLI filed the order by providing the USS Ronald Reagan with 100 29" Toshiba TVs, 60 32" Toshiba TVs and 160 TV tilt mounts.

n. On October 8, 2013, Defendant VLI submitted a fast pay invoice requesting payment of $66,807.72 for the sale to the USS Ronald Reagan, causing DFAS to pay VLI that amount.

o. At all times between October 2, 2013 and October 8, 2013, all Defendants concealed from DLA and DFAS that VLI (1) actually supplied TVs and TV tilt mounts, not 27 industrial motorized plumber snakes, and

(2) marked up the cost of the 29" TVs, 32" TVs and TV tilt mounts by 41%.

      p.    Between approximately March 1, 2008 and January 31, 2015, using the same fraudulent manner and means described above, JEFFREY HARRINGTON, MICHAEL MAYER, VETERAN LOGISTICS, INC., INDUSTRIAL XCHANGE, INC., and BOSTON LASER TECHNOLOGY, INC. invoiced, and the Navy paid, approximately $45 million for EMALL sales related to over 12,000 transactions. On a sample of 60 of those transactions between August 2009 and October 2013, totaling approximately $2,868,590 in sales, the loss to the Navy was approximately $1,417,395.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

### (26 U.S.C. §7206(1))

14. On or about October 17, 2011, in the Southern District of California, JEFFREY HARRINGTON, a resident of San Diego, California, did willfully make and subscribe a United States Individual Income Tax Return, Form 1040, for the calendar year 2010 which was verified by a written declaration that it was made under the penalties of perjury and which JEFFREY HARRINGTON did not believe to be true and correct as to every material matter. That Form 1040, which was filed electronically with the Internal Revenue Service Center, stated on Line 22 that JEFFREY HARRINGTON's Total Income in 2010 was $462,222, whereas, as he then and there knew, he had approximately $284,712 in additional unreported income in 2010.

      In violation of Title 26, United States Code, Section 7206(1).

//
//
//

7

## COUNT THREE

(26 U.S.C. §7206(1))

15. On or about October 17, 2011, in the Southern District of California, MICHAEL MAYER, a resident of San Diego, California, did willfully make and subscribe a joint United States Individual Income Tax Return, Form 1040, for the calendar year 2010 which was verified by a written declaration that it was made under the penalties of perjury and which MICHAEL MAYER did not believe to be true and correct as to every material matter. That Form 1040, which was filed electronically with the Internal Revenue Service Center, stated on Line 22 that MAYER's Total Income in 2010 was $633,811, whereas, as he then and there knew, he had approximately $126,970 in additional unreported income in 2010.
In violation of Title 26, United States Code, Section 7206(1).

## FORFEITURE ALLEGATIONS

Upon conviction of the offense alleged above, defendants JEFFREY HARRINGTON, MICHAEL MAYER, VETERAN LOGISTICS, INC., INDUSTRIAL XCHANGE, INC., BOSTON LASER TECHNOLOGY, INC., and KIMBERLEE HEWITT and NATALEE HEWITT shall forfeit to the United States any real or personal property constituting, derived from, or traceable to proceeds that the defendant obtained directly or indirectly as a result of the offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

In addition, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant shall forfeit substitute property, up to the value of the amount described above, if, as a result of any act or omission of said defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred,

8

sold to, or deposited with a third party; has been placed beyond the jurisdiction of this court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

DATED: 2/28/17.

ALANA W. ROBINSON
Acting United States Attorney

*/s/ Rebecca Kanter*
REBECCA S. KANTER
Assistant U.S. Attorney

9